CASE 93—INDICTMENT—MAY 24.

# Thompson v. Commonwealth.

APPEAL FROM ROCKCASTLE CIRCUIT COURT.

103  685
f107 608

103  685
e110 513
e110 514
111  238

103  685
f137 498

1. LOCAL OPTION—REPEAL OF SPECIAL LAW—CONSTITUTIONAL LAW.
—A special or local act prohibiting the sale of liquors in a given territory, which was in force at the date of the adoption of our Constitution, was not repealed by the provisions of section 61 of the Constitution, requiring the Legislature, by general law, to provide means to take the sense of the people as to whether liquor shall be sold therein, and that "nothing herein shall be construed to interfere with, or to repeal, any law in force relating to the sale or gift, of such liquors," and the provision of section 1 of the schedule of the Constitution that "the provisions of all laws which are inconsistent with this constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions as require legislation to enforce them shall remain in force until such legislation is had, but not longer than six years after the adoption of this Constitution;" such an act remains in force without regard to whether it became operative by submission to the popular vote, or whether it took effect without such submission, except in so far as it is modified by the provisions of the general law.

2. SAME.—A warrant issued under, and referring to a special local option act applicable to a county, is good, although that act has been modified by the provisions of the general law.

3. SAME.—Where, in a special act, the sale of liquors is prohibited within a specified radius of specified churches or school houses, in such territory the sale of liquor remains prohibited subject to the procedure and penalties provided in sections 2557 and 2558 of the Kentucky Statutes, until such time as the people of the county, town, district or precinct embracing such boundary, or some part thereof, shall under the law vote that such special act shall become inoperative, and after such a vote the special law will be inoperative in the territory to which it was applicable, which is embraced in the county, city, town, district or precinct in which the vote is had.

4. Local Option—Warrant—Sufficiency of.—A warrant charging a violation of the local option law is not required to negative the provisos referred to in section 2557 of the Kentucky Statutes fixing the penalty for violations thereof.

5. Same.—It being unnecessary in a warrant to negative the proviso that the act shall not apply to a manufacturer or wholesale dealer who sells by the wholesale in quantities of not less than five gallons, an averment in such a warrant that the sale was in quantities of less than twenty gallons will be treated as surplusage.

6. Jurisdiction—Waiver of Right to Object to.—Although the judgment of a court not having jurisdiction of the subject matter is void, yet if on appeal from such court to a court having original jurisdiction of the subject matter, the parties voluntarily appear and consent to a trial, the mode of procedure by which the latter court took cognizance of the question, is an incident, objection to which may be waived, and its judgment will be binding.

W. A. MORROW AND S. D. LEWIS FOR APPELLANT.

1. The special prohibitory act of April 4, 1884, is no longer in force, having been repealed by the provision of the Constitution that all special acts in conflict with its terms should cease within six years after its adoption. Schedule of the Constitution, sec. 1; Stamper v. Commonwealth, 102 Ky.; James v. Commonwealth, 102 Ky.

2. Appellant could only be tried on the specific offense described in the warrant. Criminal Code, secs. 311 and 312.

J. N. SHARP FOR APPELLEE.

1. Even if the special act has been repealed, the general law was violated, and the pleadings being oral, the defendant was properly tried under the law in force, and the statement in the warrant pleading a special act may be treated as surplusage.

W. S. TAYLOR OF COUNSEL ON SAME SIDE.

J. N. SHARP FOR APPELLEE IN PETITION FOR REHEARING AFTER RENDITION OF THE FIRST OPINION.

1. Laws should be so construed, if possible, as to enable the officers to enforce them.

Thompson v. Commonwealth.

2. It is not necessary in a warrant, or indictment, to negative an
exception which is found in a separate and independent section of
the statute.  Commonwealth v. Bartholomew, 17 Ky. Law Rep.,
1133.

W. A. MORROW AND S. D. LEWIS FOR APPELLANT IN PETITION FOR
REHEARING AFTER RENDITION OF SECOND OPINION.

1. Under the provisions of section 10 of the Criminal Code, an offense
the penalty for which is limited to a fine of $100, or imprison-
ment not exceeding fifty days, or both, may be prosecuted by
summons, or warrant, but all other offenses must be prosecuted
by indictment, the penalty under the local option law being a
fine of not less than $100, nor more than $200, the procedure must
necessarily have been by indictment in the circuit court.
2. A circuit court had no power to inflict a fine of $50, because no
such penalty is provided under the statute; while this does not
appear to be prejudicial to appellant, it would be a dangerous
precedent to say that the judge of a circuit court by imposing a
lower fine than the minimum fixed in the statute could deprive
a defendant of the right of appeal.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

This case presents for decision the question, whether
section 61 of the Constitution of 1891, or the act of March
10, 1894, embodied in chapter 81 Kentucky Statutes,
adopted pursuant thereto, had effect to repeal a special or
local act prohibiting sale or gift of spirituous, vinous or
malt liquors, such as the act in force in Rockcastle county
at date of adoption of Constitution.

Section 61 provides:

"The General Assembly shall, by general law, provide
a means whereby the sense of the people of any county,
city, town, district or precinct may be taken, as to
whether or not spirituous, vinous or malt liquors shall
be sold, bartered or loaned therein, or the sale thereof
regulated.  But nothing herein shall be construed to in-

terfere with or to repeal any law in force relating to the sale or gift of such liquors."

By the 1st section of the general law as to intoxicating liquors, above referred to (chapter 81, Ky. Stat., section 2554), provision is made, upon application being made by a certain proportion of legal voters in territory to be affected, for submission to popular vote of question whether spirituous, vinous or malt liquors shall be sold, bartered or loaned in such territory, "or whether or not any prohibition law in force in any county, city, town, district or precinct, by virtue of any general or special act or acts, shall become inoperative; and counties, cities, towns, districts and precincts in which the sale, barter or loan of spirituous, vinous or malt liquors are now prohibited may have a vote thereon under the provisions of this act."

In Stamper v. Commonwealth (102 Ky.) this court held, that neither section 61 nor chapter 81 Ky. Stat. effected repeal of prohibitory law which took effect upon a majority of votes cast in locality affected in favor of such prohibition. In that opinion, considering the provision in section 61 that nothing therein should be construed to interfere with or repeal any law in force relating to sale or gift of liquors, Chief Justice Lewis said:

"And so the inquiry arises, whether it can be reconciled with other provisions of the Constitution, in accordance with which the statute of March 10, 1894, was enacted and exists. We think it can be done so that the general law may remain the sole and supreme law on the subject, and at the same time the purpose of the saving clause be not defeated. It had been legislative policy prior to

the adoption of the Constitution to make validity and enforcement of all prohibitory liquor laws dependent upon local option; that is, upon a majority of votes being cast at an election held in the locality affected in favor of such prohibition, and that policy was evidently intended to be continued under the present Constitution, except that the entire subject should be regulated by one general law, instead of conflicting and dissimilar local laws."

This court then held, that the saving clause in the constitutional enactment had effect to prevent undoing elections already held in pursuance of various local laws, but not to prevent enactment of provisions necessary to a full and complete general law upon the subject, applicable throughout the State.

The court further held, in effect, that where, prior to adoption of the present Constitution, an election had been held in a locality under a local law applicable thereto, and a majority of the votes had been cast against the sale of liquor, such sale continued to be unlawful until the holding of another election in such locality with a different result , according to the provisions of the general law; and that with respect to procedure in cases of violation and amount of penalty, the provisions of the general law were substituted for those of local acts so submitted to popular vote, the general law being applicable to and paramount in every such local subdivision of the State, not only in respect to the conditions of holding elections and how often they may be held, but as to the class of persons excepted, and conditions and extent of exceptions from op-

[44]

eration of the law, as well as the manner of enforcing it and penalties for its violation.

The question of whether special and local prohibitory laws not so submitted to popular vote were otherwise affected by the constitutional provision and the general law was not in that case presented or decided; and in subsequent case of James v. Commonwealth (102 Ky.) this court, through Judge Hazelrigg, said: "This case is decided without reference to the effect the case of Stamper v. Commonwealth, may have on the special local act involved here."

It is urged on behalf of appellant that the argument in the opinion in the Stamper case *supra* does not apply to a special local prohibitory act which took effect by the will of the Legislature, without submission to popular vote, and that, by section one of the Schedule of the Constitution, such local acts become inoperative six years after the adoption of the Constitution. That section of the schedule provides:

"The provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions as require legislation to enforce them shall remain in force until such legislation is had, but not longer than six years after the adoption of this Constitution, unless sooner amended or repealed by the General Assembly."

But this provision applies solely to laws which are inconsistent with constitutional provisions requiring legislation to enforce them. Clearly, a local act applicable to Rockcastle county is not inconsistent with any provision of

Thompson v. Commonwealth.

the Constitution. Section 61 requires the Legislature to provide a means of taking the sense of the people in any local subdivision as to whether or not liquor shall be sold, bartered or loaned therein; but it is there distinctly provided that nothing therein should be construed to interfere with or repeal any law in force upon the subject. That proviso applies not only to local and special legislation which became operative by submission to popular vote, but to such legislation as took effect without such submission. Such laws were laws in force at the date of adoption of the Constitution, and not repealed by virtue of any of its provisions.

Nor is there anything in the doctrine announced in the Stamper case which does not apply with equal force to either class of local prohibitory legislation.

The legislative policy prior to adoption of Constitution to make validity and enforcement of prohibitory local laws dependent upon local option is as fully subserved by providing for submission to popular vote of all propositions to discontinue existent local prohibitions, as by applying provisions of the general law to localities where such prohibitions had not existed. This view is strengthened by the legislative construction of the constitutional provision given in the general act in question. That act provides for "taking the sense of the legal voters" of any local subdivision upon the proposition whether liquor shall be sold, bartered or loaned therein; "or whether or not any prohibition law in force in any county, city, town, district, or precinct, by virtue of any general or special act or acts, shall become inoperative, and counties, cities, towns, districts

and precincts in which the sale, barter or loan of spirituous, vinous or malt liquors are now prohibited may have a vote thereon under the provisions of this act." And in section 2560 it is provided, that, notwithstanding at an election held for an entire county the majority of the votes should be cast in favor of the sale of liquor therein, such vote should not render inoperative any special prohibitory act applicable to a portion of the county, "but such act shall continue in force as if no election had been held." And the same provision for continuing existent local prohibitions is made as to political sub-divisions smaller than a county which had previously, by vote, prohibited the sale of liquor therein, except in cases where, at such county election, the majority of the votes of the smaller sub-division were cast in favor of the sale of liquor. By the same section, where a sub-division smaller than a county, had voted in favor of the sale of liquor therein, such permission was continued in force, notwithstanding the majority of the votes at an election for the entire county were cast against such sale. These provisions clearly indicate the legislative construction of the constitutional provision, and the general legislative policy to be to continue the existent local law as to the sale of liquor in force in each political sub-division, until a majority of the people of such sub-division should, under the general law, express their desire for a change; all existent local prohibitory laws, however, being, as held in the Stamper case, superseded, by the general law, so as to secure uniformity in character and administration of laws upon the subject.

It is further objected by counsel for appellant that the

Thompson v. Commonwealth.

warrant on which this case arises was issued under and referred to the special act applicable to Rockcastle county. This does not seem to us to be error, inasmuch as we hold such local act to be continued in force, modified by the provisions of the general law.    But the warrant did not state an offense, under the law as thus modified, inasmuch as it charged appellant with selling liquor in quantities of less than twenty gallons, which might be true and still appellant be guilty of no offense under the local act as modified by the general law, which fixes the minimum amount permitted to be sold at five gallons; and for this reason the judgment must be reversed.

UPON PETITION FOR RE-HEARING JUDGE DURELLE ON JUNE 9, 1898 DELIVERED THE FOLLOWING OPINION OF THE COURT, GRANTING A RE-HEARING AND AFFIRMING THE JUDGMENT:

In the brief filed upon the submission of this case, the Commonwealth's attorney urged that the judgment should not be disturbed, because the special act, if in force, had been violated, and, if not in force, the general law had been violated.

This court held, that the doctrine announced by Chief Justice Lewis in the Stamper case, as applicable to divisions of the State in which a vote had been taken against the sale of liquor in such locality was also applicable to localities where the Legislature had prohibited such sale without submission to the popular vote, but that all local laws upon the subject were modified by the provisions of the general law as to procedure, amount of liquor permitted to be sold, and penalty.    In other words, that wherever a local law was in force, either through vote of the

people or by legislative will, the sale of liquor by retail remained prohibited, not according to the terms of the local act, but as if a vote had been had in such locality against the sale of liquor under the act of March 10, 1894. In localities where the sale of liquor had been theretofore permitted, it remained legal to sell it.  In localities where its sale had been prohibited, it remained illegal to sell it; but the procedure in prosecutions against offenders, the penalty to be recovered, the amount of liquor which might be legally sold, was governed by the act of March 10, 1894, as if a vote had been taken under that act, with the result of a majority against the sale of liquor in that locality. This was done for the purpose of securing that uniformity in character and administration of laws, which as counsel correctly contends, was the leading idea of those who framed the Constitution.

The effect, therefore, of the opinions in the Stamper case and this case is, that the law embodied in sections 2557 and 2558 of the Kentucky Statutes 's in force in all localities in which prohibitory laws were in force before the adoption of the act of March 10, 1894; and those sections will so remain in force until the people in such localities shall vote otherwise.

This, we thought, was distinctly held in the two opinions.  But counsel inquires:  "What, then, is the penalty under the Rockcastle county act, which did not go into force by a vote of the people?  Is it from twenty to one hundred dollars, or from one hundred to two hundred dollars?"

Counsel also inquires as to the effect to be given to spec-

ial acts prohibiting the sale of spirituous liquors within a specified radius of specified churches or school houses. This question is not presented in the case, but to avoid unnecessary litigation we extend the opinion so far as to say, that it logically follows that in such territory the sale of liquor remains prohibited, but in the manner and to the extent, and subject to the procedure and penalties, provided in sections 2557 and 2558 of the Kentucky Statutes, until such time as the people of a county, city, town, district or precinct, embracing such boundary or embracing some part thereof, shall, under the law embodied in sections 2554 and 2555 and 2556 Kentucky Statutes, vote that such special act shall become inoperative. After such a vote, such special law will, of course, be inoperative in all the territory to which it was applicable, which is embraced in the county, city, town, district or precinct in which the vote is held.

Our attention has been called by the petition for rehearing to the fact that the proviso (section 2558) that the act shall not apply to a manufacturer or wholesale dealer who, in good faith, and in the usual course of trade, sells by wholesale in quantities of not less than five gallons, is not contained in the same clause or section which imposes the penalty. It is true that section 2557, fixing the penalty for violations of the law, provides that it shall be unlawful to sell, etc., "except as hereinafter provided;" but it is said in 1 Chitty's Criminal Law (283b) that, where the excusing matter stands in a separate clause from the main provision, "it is not necessary to state in the indictment that the defendant does not come within the excep-

tions, or to negative the provisos it contains. Nor is it even necessary to allege that he is not within the benefit of its provisos, though the purview should expressly notice them, as by saying, that none shall do the act prihibited, except in the cases thereinafter excepted. For all these are matters of defens, which the prosecutor need not anticipate, but which more properly are to come from the prisoner." And in Bishop's Criminal Procedure (1, section 638, 4) it is said: "A statute provided that one who, having a former husband or wife living, shall marry another person, or shall continue to cohabit with such second husband or wife in this State . . . shall, except in the cases mentioned in the following section, be deemed guilty of the crime of polygamy; adding, in the next section, 'that this act shall not extend to any person whose husband or wife has been continually beyond the sea,' and some other things. Thereupon it was held to be unnecessary in the indictment to negative this proviso." (Referring to State v. Abbey, 29 Vt. 60, 67 Am. D., 754.) And see Commonwealth v. Bartholomew, 17 R., 1133. The general rule is stated in Bishop, section 639: "In general, and subject to exceptions growing out of doctrines already stated, an exception or proviso which is not in the enacting clause, whether in the same section with it or not, need not be negatived."

For this reason, it is proper to treat the averment in the warrant that the sale was in quantities of less than twenty gallons as surplusage. Striking out the surplus matter, the warrant was good.

Wherefore a hearing is granted, and the judgment is affirmed.

THE COURT DELIVERED THE FOLLOWING RESPONSE TO A PETITION FOR REHEARING JUNE 21, 1898:

The appellant's petition for rehearing presents a question not heretofore made, or suggested in argument, viz: that as the act of March 10, 1894, applies with respect to the amount of the penalty, making the maximum penalty two hundred dollars, the county judge had no jurisdiction of the mater by warrant or otherwise, but the original jurisdiction was in the circuit court, and that the circuit court could acquire no jurisdiction by appeal from the county court.

It is also claimed that the penalty inflicted being less than allowed by the general act, was error to the prejudice of appellant. But this question was decided adversely to the contention here made in the Stamper case.

The point as to jurisdiction would have been well taken, if taken in the circuit court, but, in our opinion, it is now too late. The circuit court had original jurisdiction over the matter by indictment. This case was appealed to the circuit court, and the circuit court took jurisdiction, without objection, to try the question. It is true that the procedure was by warrant; but, as said in Smith v. Commonwealth (3 R., 365,) . . . the mode of procedure is an incident, and not a condition, to the exercise of jurisdiction . . ." In Randolph Co. v. Ralls (18 Ill., 29), it was held, that, although the judgment of a court not having jurisdiction of the subject matter is void, yet, if on appeal from such court to a court having original jurisdiction of the

subject matter, the parties voluntarily appear and consent to a trial, the judgment in the latter court will be binding.

No objection was made to the jurisdiction of the circuit court to try the case, and we think that the mode of procedure by which the circuit court took cognizance of the question was an incident, objection to which might be waived by the defendant

Petition for rehearing overruled.